JOHN H. STARIN, Appellant, v. THE MAYOR, ALDER-MEN AND COMMONALTY OF THE CITY OF NEW YORK and Others, Respondents.

*Leases of wharfs in New York by the commissioners of the sinking fund — void if not let at public auction—1882, chap. 410, secs. 170, 180, 716 —right of a railroad company to acquire a lease of a ferry franchise not having either end at the railroad terminus — 1884, chap. 193 — in what cases an action to restrain illegal acts will lie by a taxpayer under chap. 531 of 1881.*

Upon the trial of this action, brought by the plaintiff as a taxpayer under chapter 531 of 1881, against the defendants, the commissioners of the sinking fund, to set aside a lease of ferry franchises and a wharf, it appeared that the wharf was situated at the foot of Whitehall street, and that one of the ferry routes extended from that street to Staten Island and the other from the same point to Bay Ridge, Long Island. The franchises, after having been advertised in the notice of sale, to be let for the term of eight years and eleven months from June 1, 1884, were sold to the defendant, the Staten Island Rapid Transit Railroad Company. The notice of the sale fixed the rental of the wharf at the sum of $10,000, and stated that the ferry franchises were to be offered at an upset price of five per cent of their gross receipts. The sale was made as

provided in the notice, against the objections that each ferry route should be separately sold, and that the rental for the wharf property should be fixed by the price for which the purchaser would be willing to take it at an auction sale.

*Held,* that the authority conferred by section 180 of chapter 410 of 1882 upon the commissioners of the sinking fund to lease the wharf along with the franchise of a ferry, was qualified by the direction contained in section 716 of the same act, that "all leases, other than for districts appropriated by said department to special commercial interests, shall be made at public auction to the highest bidder:"

That as the commissioners had disposed of the lease-hold term of the wharf at the fixed rental of $10,000, in violation of the provisions of this act, their proceedings were illegal ; and should, in so far as they had been consummated, be vacated and set aside.

'That as the plaintiff possessed the qualifications prescribed in the act of 1881, and had given the bond required by it, he was entitled to maintain this action, and that the fact that he was a bidder at the sale, and was interested in the use of the wharf and the ferry franchises previous to the time at which the sale was had, did not disqualify him from so doing.

The defendant railroad company was incorporated, under the general laws of this State, to construct and operate a railway from a point on the shore of the lower bay of New York, at or near New Dorp Lane, to or near the foot of the church road in the village of Port Richmond.

Chapter 193 of 1884 authorizes any steam railroad company incorporated under the laws of this State, with a terminus in the harbor of New York, to purchase or lease boats propelled by steam, or otherwise, and operate the same as a ferry, or otherwise, over the waters of the harbor of New York, to any point distant, not more than ten miles from said terminus.

*Held,* that while the act was sufficiently broad to entitle the company to acquire the necessary boats and franchise and to operate a ferry from the terminus of its road to the city of New York, it does not appear to confer upon the company the power to lease another distinct ferry, as it proposed to do, to be operated from the city of New York to Bay Ridge on Long Island.

That as the sale was made, so far as the wharf was included in it, for a distinct price, incapable of being separated, it must, even if authorized in part, be wholly set aside.

APPEAL from a judgment, recovered at a Special Term dismissing the plaintiff's complaint.

*James McNamee,* for the appellant.

*Stewart & Boardman,* and *D. J. Dean,* for the respondents.

DANIELS, J. :

The action was brought by the plaintiff as a taxpayer, under chapter 531 of the laws of 1881, to restrain the completion of the

execution of, and to set aside a contract for, a lease of a wharf and ferry franchise in the city of New York. The wharf and bulk-head is situated at the foot of Whitehall street, and one of the ferry routes extended from that street to Staten Island, the other from the same point to Bay Ridge, in the town of New Utrecht, on Long Island.

The franchises were advertised in the City Record to be let to the highest bidder for the term of eight years and eleven months, from June 1, 1884. The rental of the wharf property was pre-viously fixed and mentioned in the notice at the sum of $10,000, and the ferry franchises were to be offered at an upset price of five per cent of their gross receipts. The sale took place as it was advertised, and the defendant, the Staten Island Rapid Transit Railroad Company, purchased the term and franchises, for which a lease was to be executed and delivered to it. Before the sale was made objections were presented to the right of the sinking fund commissioners to make it in this manner. It was urged that each ferry route should be separately sold, and that the rental for the wharf property should be fixed, alone, by the price for which the purchaser would be willing to take it at an auction sale. These objections were disregarded and bids were refused at the sale pro-posing a higher rental for the wharf and an advance over the upset price for the ferry franchises, it being determined at the time of the sale that the rental had been fixed for which the lease of the wharf was to be made. The plaintiff deeming this to have been an unlawful disposition of the leasehold interest in the wharf, and of the ferry franchises sold with it, as one of the taxpayers of the city brought this action to restrain and prevent the completion of the sale, by the execution and delivery of the lease, and to vacate and annul the sale itself.

He was a bidder at the sale, and was interested in the use of the wharf and the ferry franchises previous to the time of the making of the sale, and because of his interest the objections made by him to the authority of the sinking fund commissioners to make the sale, in the manner in which it took place, it has been urged should not be considered, and that this action cannot be maintained by him. But the law contains nothing disabling a taxpayer who may have been desirous of obtaining the leasehold interest, or who bid at the

sale, or previously owned a leasehold term in the same property, from maintaining such an action as this. What it requires is that the plaintiff shall be a taxpayer assessed for property to the amount, at least, of $1,000, and that the requisite bond shall be executed and delivered, as that has been directed by the law. And that the plaintiff was such a taxpayer, and this bond has been executed and filed, appears as facts in the case, and that distinguishes this case from *Hull* v. *Ely* (2 Abb. N. C., 440). Under the provisions of the statute he was a person authorized to maintain the action, if, upon the facts appearing, the disposition proposed to be made of the property and ferry franchises was illegal. The object of this statute is to secure the protection of public property, and to subordinate the acts of officials in its disposition, or appropriation, to the restraints of the law. And it requires to be liberally construed and applied to carry this object into effect (*Ayers* v. *Lawrence*, 59 N. Y., 192); and under its provisions actions in part the same as this have been sustained and approved by the courts. (*Bird* v. *Mayor, etc.*, 33 Hun, 396; *Warrin* v. *Baldwin*, 35 id., 334.)

By a resolution adopted by the common council of the city of New York, and approved by the mayor on the 3d of November, 1875, a ferry was established to run from the bulkhead at the foot of Whitehall street in the city of New York to Staten Island, the franchise of which was directed to be sold at auction to the highest bidder. By another resolution adopted by the common council and approved by the mayor on the 4th of June, 1877, another ferry was established from the foot of Whitehall street to Bay Ridge, the franchise of which was also directed to be sold at auction to the highest bidder. This was also the mode provided by section 170 of chapter 410 of the laws of 1882 for the sale and disposition of city property including ferry franchises. It was thereby declared that the board of commissioners of the sinking fund should, " except as in this act otherwise specially provided, have power to sell or lease, for the highest marketable price, or rental, at public auction, or by sealed bids, and always after public advertisement and appraisal, under the direction of such board, any city property, except wharfs, or piers, but not for a term longer than ten years, nor for a renewal for a longer term than ten years." The same commissioners by section 180 of this act were further

empowered to lease " in the manner provided by law," along with the franchise of a ferry within said city, " such wharf property, including wharves, piers, bulkheads and structures thereon, and slips, docks and water fronts adjacent thereto, used, or required, for the purposes of such ferry, now owned, or possessed, or which may hereafter be owned or acquired, by said city." This authority so far qualified the exception contained in section 170 of the same act as to empower the commissioners to lease with the ferry franchises, the wharfs, piers, bulkheads and structures adjacent thereto, and required for the purposes of the ferry. But the exercise of the authority in this manner conferred upon the commissioners of the sinking fund was restrained by the provision that such wharves, piers, bulkheads or structures should be leased in the manner provided by law. That is the express language of the section itself, and it contemplates the existence of a restraint upon this power of leasing the wharves, piers, bulkheads and structures thereon. And this restraint seems to have been intended to be no other than that contained in section 716 of the same act which provided that " Said department may, in the name and for the benefit of the corporation of said city, lease any or all of such property for a term not exceeding ten years, and covenant for a renewal, or renewals, at advanced rents of such leases for terms of ten years each ; but not exceeding in the aggregate fifty years. All leases other than for districts appropriated by said department to special commercial interests shall be made at public auction to the highest bidder." This section is contained in that part of the act which relates to the department of docks. But by the provision contained in section 180 of the act, that the lease shall be made in the manner provided by law, it appears to have been the object and design of the legislature to apply these directions contained in section 716 to leases made by the commissioners of the sinking fund, for the use of wharves, piers, bulkheads and structures thereon, required for the purposes of a ferry. The intention of the statute appears to be that in the disposition of this property the sales or leases of it should be made through the intervention of an auction or sealed proposals after public notice, properly advertising it. It was to give the public the advantages of competition in which interested parties should be brought together and the highest possible price obtained for the property to be sold, or leased. And

no reason can be perceived why the dock commissioners should be expressly restrained in this manner, and the commissioners of the sinking fund should be at liberty to disregard this restraint. The act, on the contrary, discountenances any such distinction, for it requires the commissioners of the sinking fund, in leasing wharves for ferry purposes, to proceed in the manner provided by law, and that manner of proceeding by section 716 is to put the property up at auction.

This direction of the law was disregarded in the notice published for the lease of the wharf property, which was not in a district appropriated to any special commercial interest, and the auction itself also proceeded in violation of this direction. For the lease-hold property was put up at a fixed price of $10,000 rental, and no change in that amount was permitted to be made, and no bid contemplating any change was received at the time when the sale took place. This was a violation of the direction given in the consolidation act for the leasing of this description of property. The law did not permit the rent to be determined by the commissioners, but that was to be done when not fixed by sealed proposals, by the persons attending at the sale, and by the highest bid offered for the lease. That it might not be a perfectly easy matter to comply with this direction of the law for the disposition of the wharf, will not justify the proceeding which was taken, for the language of the statute is imperative that the rental to be paid shall be fixed in the manner in which the prescribed sale is required to take place. But in reality the difficulty in the way of making the sale, in compliance with the direction of the statute, is more imaginary than real, for, by putting the ferry franchise, or franchises, together with the lease of the wharf, the bidders could very intelligently bid for both by indicating the rental to be paid for the wharf and the percentage on the earnings of the ferry to be paid for its franchise. No serious obstacle would stand in the way of carrying the law into execution in this manner and complying literally with its directions. That was not done at the auction which took place, through which the railroad company claims to have acquired the right to the use of the wharf and the franchise of each of these ferries.

The railroad company was incorporated, under the general rail-

road laws of this State, to construct and operate a railway from a
point on the shore of the lower bay of New York, at or near New
Dorp lane, to or near the foot of the Church road, in the village of
Port Richmond.   It was no part of its organization to acquire a
ferry right, or to run or operate a ferry ·from the terminus of its
road to the city of New York. ˙And whatever right or authority
it has since obtained for this purpose was acquired by it under
chapter 193 of the Laws of 1884.   This act provides that "Any
steam railroad company incorporated under the laws of this State,
with a terminus in the harbor of New York, is hereby authorized
and empowered to purchase or lease boats propelled by steam  or
otherwise, and operate the same as a ferry or otherwise, over
the waters of the harbor of New York to any point distant
not more than ten miles from said terminus."   And while this
act is sufficiently broad to entitle the railroad company to
acquire the necessary boats and franchises, and to operate a ferry
from the terminus of its road to the city of New York, it does not
appear to confer upon the company the power to lease another
distinct ferry, as it is now proposed it shall do, to be operated from
the city of New York to Bay Ridge, on Long Island.   What the
statute intended was that any railroad company having a road, with
a terminus at the harbor of New York, should be empowered to
reach the city by maintaining a ferry from that terminus to any
other point not more than ten miles distant from this terminus.
.But the ferry route, extending from the foot of Whitehall street
to Bay Ridge has no connection whatever with the terminus of the
railroad company.   It is, on the other hand, distinct and inde-
pendent from the terminus of the railroad, having terminal points
of its own, in which the railroad company is in no way concerned.
And if it could acquire, under the authority of this statute, the lease
of such a ferry route, it may acquire with equal propriety a lease of
any route extending from any part of the city of New York, either
to Long Island or the Jersey shore.   And to confer such power
upon the railroad company very clearly seems not to have .been the
design of this act.   And if it was not, then the lease proposed to
be made to the railroad company for the Whitehall and Bay Ridge
route would be an illegal disposition of the property and franchises
of the city, and liable to restraint and prevention under the act of

1881. This subject was considered in *Latham* v. *Richards* (12 Hun, 360), and an unauthorized disposition of public property was in that action restrained. And there is good reason why it should be, for if the railroad company had no power to purchase or accept, the lease of this ferry franchise, and the right to use the wharf, so far as it should be necessary, for that purpose, it might hereafter refuse to be bound by the lease, and abandon it as unauthorized to the city. And the commissioners of the sinking fund have not been empowered to place public property under a contingency of that description. The sale was made, so far as the wharf was included in it, for a distinct price, incapable of being separated, or apportioned to the different ferry franchises. And if it was unauthorized in part because of the inability of the railroad company to acquire the Bay Ridge route, it seems to follow that it must be held to be wholly unauthorized. But whether it be so held or not, as long as the commissioners disposed of the leasehold term for the wharf in violation of the provisions of the statute, their proceedings were illegal and they should be restrained and prevented from carrying them into effect, and so far as they may have been consummated they should be vacated and annulled. The judgment, therefore, should be reversed, and, as the facts are already found by the court in its decision, a judgment in conformity with these views should be entered in the action. And as this will dispose of the allowances no specific attention is required to be devoted to them.

BRADY, J., concurred.

DAVIS, P. J., taking no part in the decision.

Judgment reversed, and judgment ordered as directed in opinion.